<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JANE DOE (K.R.D.),<br><br>Plaintiff,<br><br>v.<br><br>WYNDHAM HOTELS & RESORTS, INC. and BA HOTEL, INC.,<br><br>Defendants. | Civil Action No: 24-8174 (SDW) (JBC)<br><br>**OPINION**<br><br>April 21, 2025 |

**WIGENTON**, District Judge.

Before this Court are two pending motions filed by Defendants Wyndham Hotels & Resorts, Inc. ("Wyndham") and BA Hotel, LLC ("BA Hotel," and, together with Wyndham, "Defendants") to dismiss Plaintiff Jane Doe (K.R.D.)'s ("Plaintiff") Complaint (D.E. 1 (Compl.) pursuant to Federal Rule of Civil Procedure 12(b)(6). Jurisdiction is proper pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated herein, the motions to dismiss are both **DENIED**.

## I.    <u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

Plaintiff K.R.D. alleges that she was sex trafficked by an undisclosed individual from April 2014 through December 2016. (Compl. ¶ 20.) Plaintiff specifically alleges that the sex trafficking occurred at a Hawthorn Suites located in Sacramento, California (the "Subject Hotel") from April 2014 through July 31, 2014. (*Id.*) She states that several trafficking victims had been exploited at the subject hotel before her, and that there were ample "red flags" which did or should have put

Defendants on notice of what was taking place. (*See id*. at ¶¶ 47–54.) These include, but are not limited to, that "[t]he hotel was in an area known for prostitution[,]" that K.R.D. "was forced to wear provactive [sic] and revealing clothing," that "Housekeeping saw an excessive amount of condoms in the trash can[,]" that "[t]here was heavy foot traffic in and out of Jane Doe (K.R.D.)'s room involving men who were not hotel guests," and that "Jane Doe (K.R.D.) was forced to see 5 to 6 johns every day…[who] entered and left at unusual hours and were present at the hotel for brief periods of time[.]" (*Id.* at ¶ 51.) Plaintiff refers to several online reviews of the Subject Hotel from around the timeframe of the alleged sex trafficking which "show the pervasiveness of sex trafficking before and well after [she] was trafficked." (*Id.* at ¶ 45.)

Plaintiff further alleges that Wyndham "knew or should or have known about the trafficking of Jane Doe (K.R.D.) based on its policy or protocol that required hotel staff to report suspected criminal activity including sex trafficking." (*Id.* at ¶ 54.) She also states that the Defendants "regular[ly] inspect[ed] … the hotel property" and "monitor[ed] … online reviews[,] … customer surveys[,] and complaints." (*Id.* at ¶ 49.) Wyndham allegedly directly operated the Subject Hotel, including by "controll[ing] all details of the guest reservation, check-in, and payment processes," controlling "a brand-wide 'do not rent' system," and "restrict[ing] the ability of franchisee [sic] and staff to refuse or cancel a reservation," among other involvement. (*Id.* at ¶ 65.) BA Hotel, the franchisee, allegedly facilitated trafficking by, among other things, "allowing inappropriate and inadequate practices for hiring, training, supervising, managing, and disciplining front-line staff regarding issues related to human trafficking" and having "inadequate and inadequately enforced sex trafficking notice and training for hotel staff." (*Id.* at ¶ 59.)

Plaintiff filed the Complaint on July 31, 2024. The Complaint contains three causes of action, all alleging violations of the Trafficking Victims Protection Reauthorization Act

("TVPRA"), 18 U.S.C. §§ 1591, 1595.  Count I alleges that Defendants are liable as perpetrators; Count II alleges that they are liable as beneficiaries, and Count III alleges that Wyndham is vicariously liable for the acts of BA Hotel.  (*Id.* at ¶¶ 78–90.)  Wyndham filed its motion to dismiss (D.E. 10) on September 30, 2024, BA Hotel filed its motion to dismiss (D.E. 21) on December 20, 2024, and the motions were timely briefed.  (D.E. 12–13; 26; 29.)

## II.    **LEGAL STANDARD**

Defendants move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6).  An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level[.]"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a showing, rather than a blanket assertion, of an entitlement to relief" (internal quotation marks and citation omitted)).

In considering a motion to dismiss pursuant to Rule 12(b)(6), a district court must conduct a three-step analysis.  First, it must "tak[e] note of the elements a plaintiff must plead to state a claim."  *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (alteration in original) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).  Second, the court "disregard[s] threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements."  *Id.* (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)).  Third, the court assumes the veracity of all well-pleaded factual allegations, "constru[es] them in the light most favorable to the plaintiff, and draw[s] all reasonable inferences in the plaintiff's favor."  *Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 328 (3d Cir. 2022).  "If,

after completing this process, the complaint alleges 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of' the necessary elements of a claim, then it plausibly pleads a claim." *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 556). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

## III.    DISCUSSION

At the outset, this Court notes that this case involves many of the same parties, counsel, and legal arguments as a prior case recently decided by this Court. *Doe M.J.J. v. Wyndham Hotels & Resorts, Inc.*, No. 24-6490-SDW-JRA, 2025 WL 342092 (D.N.J. Jan. 30, 2025). The legal issues raised in the present motions to dismiss are materially similar, and this Court's analysis herein largely tracks its reasoning in that earlier opinion.

The TVPRA criminalizes, in relevant part,

> knowingly … recruit[ing], entic[ing], harbor[ing], transport[ing], provid[ing], obtain[ing], … maintain[ing], patroniz[ing], or solicit[ing] … a person; or … benefit[ting] … from participation in a venture which has engaged in [any of those acts] knowing, or … in reckless disregard of the fact, that means of force, threats of force, fraud, coercion … or any combination of such means will be used to cause the person to engage in a commercial sex act.

18 U.S.C. § 1591(a). It also permits victims of such acts to seek civil remedies against "perpetrator[s]" or anyone who "knowingly benefits, or attempts or conspires to benefit … from participation in a venture which that person knew or should have known has engaged in" the acts described in § 1591. 18 U.S.C. § 1595(a). As an initial matter, Plaintiff has adequately pled that she was a victim of sex trafficking. (Compl. ¶ 8 ("[Plaintiff] was harbored, transported, or provided

for the purpose of causing her, through force, fraud or coercion, to commit a commercial sex act.");

*see Jane Doe (C.J.) v. Albert Cotugno, Jr.*, No. 23-2973, 2024 WL 4500994, at *3 n.6 (D.N.J. May 16, 2024).)  As explained further below, she has also adequately pled liability against Defendants under the TVPRA.

### A. Perpetrator Liability

To state a claim under § 1595(a) based on direct (or "participant" or "perpetrator") liability, a plaintiff must plausibly allege that the defendant "knowingly participated in a venture" that engaged in sex trafficking and that the defendant "knew or should have known" that the venture involved trafficking.  *See* 18 U.S.C. § 1595(a); *see also A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 935–38 (D. Or. 2020).  Courts have found that allegations of continued collaboration with traffickers, failure to intervene despite known red flags, and facilitating trafficking conduct can support such a claim.  *See J.C. v. Choice Hotels Int'l, Inc.*, No. 20-00155, 2020 WL 6318707, at *4–8 (N.D. Cal. Oct. 28, 2020).   According to the Complaint, Plaintiff was trafficked at the hotel for a period of time, during which hotel staff allegedly observed signs of trafficking — including frequent extended stays, cash payments, refusal of housekeeping, and excessive foot traffic of individuals who were not hotel guests to Plaintiff's room.  (Compl. ¶¶ 47; 51.)  Despite these allegedly clear red flags, Defendants allegedly failed to investigate, report, or intervene in any way and continued to rent rooms out.  These allegations support the inference that Defendants knew or recklessly disregarded the trafficking and enabled it through its continued provision of rooms and services.  Courts have routinely held that similar allegations are sufficient to state a claim under the perpetrator theory at the motion to dismiss stage.  *See, e.g., Doe v. Hotels*, No. 23-1012, 2024 WL 2955728, at *6 (M.D. Fla. June 12, 2024) (defining "to 'harbor'" as "to give shelter or refuge to" and denying motion to dismiss as to perpetrator liability of hotel that

"provide[d]" traffickers a room where victim "could be trafficked for profit"); *Doe v. Rickey Patel, LLC*, No. 20-60683, 2020 WL 6121939, at *5 (S.D. Fla. Sept. 30, 2020) ("The Court finds it is sufficient for Plaintiff to plead that Defendants participated in a venture by renting rooms to individuals that knew or should have known were involved in a sex-trafficking venture, including the sex-trafficking victim.").

### B. Beneficiary Liability

To state a claim for beneficiary liability under the TVPRA, Plaintiff must plead that Defendants "(1) 'knowingly benefit[ted] financially or by receiving anything of value, (2) from participation in a venture, (3) that [D]efendant[s] knew or should have known has engaged in sex trafficking under section 1591.'" *Cotugno*, 2024 WL 4500994, at *3 (first alteration in original) (quoting *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 181 (E.D. Pa. 2020)). As to the first element, Plaintiff plausibly alleges that Defendants knowingly benefitted financially insofar as they received profits from rooms rented out to Plaintiff's traffickers and others involved in the venture. *See id.* (citing *A.W. v. Red Roof Inns., Inc.*, No. 21-4934, 2022 WL 17741050, at *6 (S.D. Ohio Dec. 16, 2022); *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d at 936. As to the second element, the "venture" need not be a trafficking ring or an entity devoted solely to trafficking. Rather, a legal business entity — such as a hotel or a franchise relationship — can constitute a "venture" for purposes of the statute when sex trafficking occurs within its operations and the defendant knowingly benefits from its continued existence. *See M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 970 (S.D. Ohio 2019). Plaintiff's allegations are also sufficient at this stage to establish that the Defendants had actual or constructive knowledge that the ventures were engaged in her sex trafficking. She pleads that the Defendants knew of the signs of sex trafficking and its pervasiveness in the hotel industry (Compl. ¶¶ 36, 44–50), and that based

on that knowledge, they should have known of sex trafficking occurring as to her. She alleges that the signs of her sex trafficking specifically were obvious to hotel staff and should have been known to Defendants. (*Id.* at ¶ 51–52; *see Cotugno*, 2024 WL 4500994, at \*4–5 (finding, at motion to dismiss stage, that allegations of cash payments, male visitors at unusual hours, and other signs were sufficient to establish actual or constructive knowledge as to sex trafficking); *see also E.B. v. Howard Johnson by Wyndham Newark Airport*, No. 21-2901, 2023 WL 12053001, at \*5–10 (D.N.J. Dec. 29, 2023).

These allegations — accepted as true at this stage — are sufficient to state a claim for beneficiary liability. *See M.A.*, 425 F. Supp. 3d 959, 970 (S.D. Ohio 2019) (beneficiary liability adequately pled where hotel generated revenue from renting rooms to traffickers and failed to take action despite red flags). BA Hotel relies on the Eleventh Circuit's decision in *Doe #1 v. Red Roof Inns*, 21 F.4th 714 (11th Cir. 2021), to argue that the allegations against them do not suffice to establish beneficiary liability under the TVPRA. However, this case is distinguishable in several key respects, particularly with regard to the factual allegations. First, *Red Roof Inns* is an Eleventh Circuit decision, and while it may offer persuasive authority regarding the TVPRA, it is not binding on this Court in the Third Circuit. As such, the factual and legal framework of that decision is not directly controlling here. Moreover, the court in *Red Roof Inns* specifically emphasized the need for more specific allegations linking the franchisor to trafficking activities that occurred at the hotel in question, which is not the case here. Plaintiff's allegations against BA Hotel, while by no means overwhelming, are more specific, alleging direct involvement in a commercial venture and failure to intervene, thus supporting beneficiary liability at this stage in the litigation.

### C.  Vicarious Liability

Plaintiff alleges that Wyndham is "vicariously liable for the TVPRA violations of its franchisee and the subagents of its franchisee."  (Compl. ¶ 89.)  Although not expressly stated in the TVPRA, courts have recognized that vicarious liability may be imposed under § 1595(a) based on common law agency principles.  *See J.C. v. Choice Hotels Int'l, Inc.*, 2020 WL 6318707, at *8; *A.B. v. Hilton Worldwide Holdings*, 484 F. Supp. 3d at 939.  "An agency relationship is created when one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agent."  *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1434 (3d Cir. 1994) (citing *Sears Mortg. Corp. v. Rose*, 634 A.2d 74, 79 (N.J. 1993)). In hotel TVPRA cases similar to this one,

> [t]he question of whether a franchisor has retained sufficient control to establish an agency relationship depends entirely on the facts of each individual case, including the extent of the control as defined by the franchise agreement, and the actual practice of the parties.  The hallmark of an agency relationship is that the principal has the right to control the manner in which the agent performs his duties.

*Doe (P.B.) v. Wyndham Hotels & Resorts, Inc.*, No. 23-1493, 2023 WL 8890229, at *5 (D.N.J. Dec. 26, 2023).  Vicarious liability claims have withstood motions to dismiss based on allegations that franchisors controlled "the mode and manner of the work … [and] employee training," imposed "standardized and strict rules of operations, … controlled pricing and reservations" and "regularly conducted inspections."  *Id.*; *see A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 196 (E.D. Pa. 2020); *Cotugno*, 2024 WL 4500994, at *6 (holding allegations that franchisor "shared profits, standardized employee training and rules of operations, controlled pricing and reservations, regularly conducted inspections, provided operational support, and had the right to terminate any franchisee … that failed to comply with [franchisor's] requirements" sufficient to plead vicarious liability).

The Complaint alleges that Wyndham entered into a franchise agreement with BA Hotel and received a direct financial benefit for having done so.  (Compl. ¶ 71.)  It further alleges that Wyndham retained the right to control many aspects of BA Hotel's operations related to sex trafficking identification, including through the ability to terminate the agreement.  (*Id.* ¶ 64.)  These allegations, taken together, are sufficient to support a plausible inference of an agency relationship for purposes of vicarious liability at the pleading stage.  Moreover, the Complaint alleges that Wyndham had knowledge of sex trafficking occurring at branded properties across the country based on public reports, litigation, and internal training initiatives.  (*Id.* ¶ 37–43.)  Courts have found that allegations of corporate awareness of trafficking risks, combined with the failure to implement or enforce adequate anti-trafficking policies across a franchise network, are sufficient to state a claim for vicarious liability.  *See A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d at 194–95.

At this stage, the Court must draw all reasonable inferences in Plaintiff's favor. The allegations here, though general, do support a plausible theory that Wyndham knowingly benefited from its relationship with BA Hotel and failed to take appropriate action despite having the right and ability to do so.  Accordingly, the motion to dismiss is denied as to a vicarious liability theory.

## IV.    <u>CONCLUSION</u>

This Court acknowledges that the Complaint does not always clearly delineate which allegations apply to which Defendant, and that the allegations appear to be skewed towards Wyndham as the franchisor.  Nor does the Complaint provide detailed clarity as to the corporate relationship and delineation of responsibilities at the Subject Hotel between the two entities. However, at this stage, Plaintiff is not required to produce evidence or plead with specificity the internal structure or operational distinctions between Defendants.  These are issues more appropriately addressed through discovery, which will clarify the roles, responsibilities, and

relationship between Defendants at the time of the alleged trafficking.  For now, the allegations, taken as true and viewed in the light most favorable to Plaintiff, are sufficient to proceed against both Defendants.

For the reasons set forth above, Defendants' motions to dismiss are both **DENIED**.  An appropriate order follows.

*/s/ Susan D. Wigenton*
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk
cc:     James B. Clark, U.S.M.J.
        Parties